No. 88–7381. BONIN *v.* CALIFORNIA. Sup. Ct. Cal. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth

and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the petition for certiorari and vacate the death penalty in this case. Even if I did not take this view, I would grant the petition because it raises several important and recurring questions concerning a criminal defendant's Sixth Amendment right to the assistance of counsel unburdened by any conflict of interest. First, on what showing must a trial court explore a possible conflict on the part of a defendant's attorney? Second, if a defendant's attorney had an actual conflict, must the defendant demonstrate that the conflict adversely affected the attorney's performance in order to obtain a new trial?

## I

On the eve of his trial for several murders and robberies, petitioner William George Bonin moved to replace Earl Hanson, who had been his attorney for over a year, with William Charvet. The prosecution opposed the motion principally on the ground that substituting Charvet would create two conflicts of interest that could jeopardize the effectiveness of Charvet's representation. First, Charvet had maintained an attorney-client relationship with James Munro, Bonin's alleged accomplice and a key prosecution witness against him, during which Charvet and Munro had discussed the facts of the case. Second, the prosecution maintained that Charvet's retainer agreement likely included a provision giving him the literary rights to Bonin's life story. The trial court initially denied Bonin's motion to substitute Charvet for Hanson, in large part because it found that Charvet's relationship with Munro created an actual conflict of interest. The court later permitted Charvet to represent Bonin, however, without addressing either conflict and without obtaining a waiver from Bonin of his right to conflict-free counsel.

Bonin subsequently was convicted of 10 counts of murder and robbery and sentenced to death. The California Supreme Court, in a split decision, affirmed the convictions and sentence, rejecting Bonin's argument that Charvet's alleged and actual conflicts of interest deprived Bonin of effective assistance of counsel. The court held that the trial court did not err by failing to explore the alleged literary rights agreement because the trial court had not been presented with sufficient evidence of such an agreement. Although the State Supreme Court did find that the trial court erred in allowing Charvet's substitution after learning of his rela-

tionship with Munro, it refused to reverse the convictions and sentence on the ground that Bonin had not demonstrated that Charvet's performance as counsel was adversely affected by this conflict of interest.   47 Cal. 3d 808, 765 P. 2d 460 (1989).

## II

I would grant Bonin's petition to determine whether the trial court had a duty to inquire into the potential conflict of interest arising from the alleged literary rights deal between Charvet and Bonin.   It is well established that the right to effective assistance of counsel carries with it "a correlative right to representation that is free from conflicts of interest."   *Wood* v. *Georgia,* 450 U. S. 261, 271 (1981).   It is also apparent that a literary rights agreement may seriously undermine an advocate's loyalty to his client's interests.   In a passage quoted in the California Supreme Court's opinion, the American Bar Association underscores the dangers of such arrangements:

> "A grave conflict of interest can arise out of an agreement between a lawyer and an accused giving the lawyer the right to publish books, plays, articles, interviews, pictures, or related literary rights concerning the case. . . . [I]t may place the lawyer under temptation to conduct the defense with an eye on the literary aspects and its dramatic potential.   If such an arrangement or contract is part of the fee, in lieu of the fee, or a condition of accepting the employment, it is especially reprehensible."   ABA Standards for Criminal Justice 4–3.4 (2d ed. 1980).

See also 47 Cal. 3d, at 836, 765 P. 2d, at 475 (quoting prior draft of ABA standards).

To protect a defendant's right to conflict-free counsel, a trial court must initiate an inquiry when it knows or reasonably should know of the possibility of a conflict of interest.   *Wood* v. *Georgia, supra,* at 272, and n. 18; see also *Wheat* v. *United States,* 486 U. S. 153, 160 (1988); *Cuyler* v. *Sullivan,* 446 U. S. 335, 347 (1980).   In *Wood,* the petitioners had been convicted of distributing obscene materials.   Their probation was revoked when they failed to pay substantial fines.   This Court vacated the probation revocation because the trial court had failed to inquire into a possible conflict of interest on the part of the petitioners' attorney. The possibility of a conflict was apparent not from any concrete

evidence, but from the circumstances of the representation. In particular, the petitioners' lawyer, who had been selected and paid by their employer, pressed a constitutional attack rather than arguing for leniency and a reduction in the fines, possibly to create a test case for the petitioners' employer. *Wood* v. *Georgia*, 450 U. S., at 272. Moreover, this Court found that the "the fact that the State raised the conflict problem explicitly and requested that the court look into it" should have alerted the trial court to the need for further inquiry. *Id.*, at 273. The Court held that although it was difficult to determine from the appellate record whether an *actual* conflict was present, "the *possibility* of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further." *Id.*, at 272.

The California Supreme Court departed from *Wood* in this case by holding that a defendant must present hard evidence to trigger a trial court's duty to investigate a potential conflict of interest. The possibility of a conflict here was at least as apparent as it was in *Wood.* Bonin, though indigent, was able to hire a private attorney on the eve of the trial in a highly publicized and notorious case. The prosecution specifically objected to the substitution of Charvet because of the likelihood that the retainer agreement included a literary rights deal. When the court asked Charvet whether he had made such a deal with Bonin, he answered evasively, asserting that the prosecution had no right to inquire into his fee arrangement and that this Court would sanction any literary rights agreement. Despite the clear possibility that Charvet had entered into a retainer agreement that could seriously compromise his duty of loyalty to his client, the court failed to inquire further, even after continued objection by the prosecution.

Because the trial court did not conduct the necessary inquiry, it is impossible for this Court to determine from the record whether an actual conflict resulted from a literary rights deal. As in *Wood, supra*, at 273, the only appropriate response in such a circumstance is to vacate the judgment below and remand to the trial court for it to determine whether an actual conflict existed. If the trial court were to find an actual conflict, I believe, for the reasons next set out, that Bonin is entitled to a new trial.

## III

I would also grant Bonin's petition to decide whether a criminal defendant denied the right to conflict-free counsel must show that the conflict adversely affected his attorney's performance. The California Supreme Court acknowledged Charvet's prior attorney-client relationship with Munro; it further held that the trial court erred by permitting Charvet to represent Bonin without obtaining a waiver from Bonin of his right to conflict-free counsel.* Nevertheless, the court refused to reverse Bonin's conviction because petitioner had not shown that the conflict adversely affected Charvet's performance. In my view, we should presume adverse effect on counsel's performance once an actual conflict is shown.

This Court has never squarely resolved the question whether proof of adverse effect is required to overturn a conviction once an actual conflict is proved. In *Cuyler* v. *Sullivan*, the Court stated that where a trial court has no reason to suspect a possible conflict, a defendant, in order to establish a Sixth Amendment violation on appeal, must show that "an actual conflict of interest adversely affected his lawyer's performance." 446 U. S., at 348. *Sullivan* left unclear, however, whether an actual conflict should be presumed to have an adverse effect, or whether a defendant must prove *both* an actual conflict *and* an adverse effect. See *id.*, at 358 (MARSHALL, J., concurring in part and dissenting in part). *Sullivan* held merely that "the *possibility* of conflict is insufficient to impugn a criminal conviction" on appeal. *Id.*, at 350 (emphasis added). This Court subsequently appeared to suggest in dictum that *Sullivan* required separate showings of actual conflict and adverse effect to reverse a criminal conviction. *Strickland* v. *Washington*, 466 U. S. 668, 692 (1984) ("Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'") (quoting *Cuyler* v. *Sullivan, supra*, at 350, 348). *Strickland*'s reading of *Sullivan*, however, is at odds with the holding in *Wood* v. *Georgia*. In *Wood*, this Court not only vacated the judgment below because

---

*Of course, if Bonin had knowingly, intelligently, and voluntarily waived his right to conflict-free counsel, he would have no grounds for appeal on this score. Cf. *Wheat* v. *United States*, 486 U. S. 153, 166–167, and n. 1 (1988) (MARSHALL, J., dissenting). Absent such a waiver, however, the trial court had a duty to inquire into possible conflicts and, upon finding an actual conflict, to deny the motion to substitute Charvet.

the trial court had failed to investigate a possible conflict, but it also instructed the trial court to conduct a new revocation hearing if it found that an actual conflict existed and that the petitioners had not waived their right to conflict-free counsel. *Wood* v. *Georgia*, 450 U. S., at 273–274. The Court did not require the petitioners to prove on remand that the conflict adversely affected their counsel's performance.

It is axiomatic that "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Holloway* v. *Arkansas*, 435 U. S. 475, 489 (1978) (quoting *Chapman* v. *California*, 386 U. S. 18, 23 (1967)). The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial. See *Holloway* v. *Arkansas, supra*, at 490 ("The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters"). For this reason, a defendant who shows an actual conflict need not demonstrate that his counsel's divided loyalties prejudiced the outcome of his trial. *Cuyler* v. *Sullivan, supra*, at 349–350. The right to conflict-free counsel is simply too important and absolute "to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser* v. *United States*, 315 U. S. 60, 76 (1942); accord, *Cuyler* v. *Sullivan, supra*, at 349. We should be no more willing to countenance nice calculations as to how a conflict adversely affected counsel's performance. "The conflict itself demonstrate[s] a denial of the 'right to have the effective assistance of counsel.'" *Cuyler* v. *Sullivan, supra*, at 349 (quoting *Glasser* v. *United States, supra*, at 76).

Moreover, requiring proof of actual adverse effect would essentially eliminate all Sixth Amendment claims based on conflicts of interest because gauging how a conflict affected an attorney's performance is usually impossible. As this Court explained in the context of prejudice:

> "[I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to indentify from

the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible." *Holloway* v. *Arkansas, supra,* at 490–491.

The same factors that make it nearly impossible to show prejudice make it equally difficult to prove adverse effect. In this case, for example, how could petitioner demonstrate on appeal that Charvet's attorney-client relationship with Munro limited Charvet's ability to cross-examine Munro? The California Supreme Court was satisfied that Charvet's attack on Munro's credibility during cross-examination was "broad and deep." But an appellate court cannot determine what Charvet was *unable* to ask for fear of violating Munro's attorney-client privilege. Given the finding that Charvet's relationship with Munro created a conflict, it seems beyond doubt that Charvet must have refrained from pursuing certain lines of inquiry. Similarly, if the trial court on remand were to find that an actual conflict resulted from the literary rights agreement, it would be exceedingly difficult for that court, or an appellate court, to determine whether counsel's actions or inactions resulted from strategic choices made in the interest of his client or, rather, from counsel's own interest in maximizing the trial's drama so as to create a bestseller.

Conflict-of-interest claims thus differ in kind from standard ineffective-assistance-of-counsel claims. This Court has, with respect to the latter, indulged in the presumption that counsel's conduct was the result of strategic decisions made in accordance with the client's best interests. *Strickland* v. *Washington,* 466 U. S., at 689. Such a presumption is arguably tenable in those cases because counsel's basic loyalty to his client is not in question. When a known conflict undermines counsel's duty of loyalty, "perhaps the most basic of counsel's duties," *id.,* at 692, however, that presumption is inapplicable; instead, a court must presume that counsel's divided loyalties adversely affected his performance on behalf of his client. When the effects of a constitutional violation are not only unknown but unknowable, the Constitution demands that doubts be resolved in favor of a criminal defendant. Unless the

defendant validly waived his right to conflict-free counsel, then, a showing of actual conflict alone necessitates a new trial.

## IV

Because Bonin stands to be executed, it is imperative that this Court ensure that he was fairly tried and sentenced. The Sixth Amendment demands that every criminal defendant receive the assistance of conflict-free counsel. It is undisputed that petitioner's counsel was burdened by at least one actual conflict and possibly another. It is also a fact that petitioner did not waive his right to conflict-free counsel. In these circumstances, the Sixth Amendment requires that petitioner be given a new trial. I therefore dissent from the denial of certiorari.