Leamon WHITE, Appellant,

v.

STATE of Missouri, Respondent.

No. 78459.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1997.

Rehearing Denied March 25, 1997.

---

9. *Kanagawa,* 685 S.W.2d at 836.

10. *Id.* (citing *Jackson,* 581 S.W.2d at 42).

11. *State v. Rector,* 328 Mo. 669, 40 S.W.2d 639, 643 (1931).

Melinda K. Pendergraft, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cassandra K. Dolgin, Assistant Attorney General, Jefferson City, for respondent.

HOLSTEIN, Chief Justice.

Leamon White was convicted of first degree murder and sentenced to death. This is an appeal from a judgment denying relief pursuant to a motion to vacate judgment and sentence under Rule 29.15. White's primary contention is that his trial attorneys were ineffective in their investigation and presentation of witnesses, conduct of voir dire, sentencing phase strategy, and that they sought to undermine his chances for post-conviction relief in order to insulate themselves from criticism for their deficient performance. Without holding an evidentiary hearing, the circuit court overruled White's Rule 29.15 motion. We find that none of the numerous allegations made by White in his motion for post-conviction relief require an evidentiary hearing. The judgment of the circuit court is affirmed.

## I.

White's Rule 29.15 motion has been before this Court on two prior occasions. In the first appeal, *State v. White*, 813 S.W.2d 862 (Mo. banc 1991), *cert. denied*, 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed.2d 434 (1992), the facts were set out at length. To summarize, in January 1987, three men entered the home of Don Wright and Carol Kinney, purportedly to buy crack cocaine. Instead, the men tied up Wright, Kinney and her children, Deonta and Raymond, and Earnest Black, a guest in the home. The men beat Mr. Black and Mr. Wright, interrogating them about where to find drugs. Then the men slit Mr. Wright's and Ms. Kinney's throats and left the house, after turning on the gas stove and blowing out the pilot lights. As a result of the savage attack, Don Wright died of stran-gulation and asphyxiation. The children, who were in bed in a nearby bedroom during the attack, were later able to free themselves and call police. At trial, Ms. Kinney and Mr. Black identified Leamon White as one of the attackers. White was convicted of first degree murder and sentenced to death. On appeal, this Court affirmed the conviction and sentence.

In that opinion, the Court described the circumstances surrounding the filing of White's various motions for post-conviction relief. In August 1989, White filed a pro se motion under Rule 29.15, but failed to have it notarized, apparently because no notary was available to him in prison. The motion court appointed counsel, who later requested an extension of time to file an amended motion. About two weeks before the extension expired, the first attorney withdrew, and another was appointed. Several days after the extended filing period had expired, the newly appointed attorney filed a first amended motion and an application for a further extension of time. That extension was granted, and a second amended motion was filed. The motion court issued a judgment, which included findings of fact and conclusions of law denying relief without an evidentiary hearing on August 1, 1990. Without addressing the motion court's substantive judgment, this Court remanded for findings on whether White had been abandoned by post-conviction counsel.

On remand, the circuit court dismissed the Rule 29.15 motion as not properly verified. In the alternative, the court determined that White was not abandoned by post-conviction counsel and reinstated the original findings and conclusions overruling the motion on the merits. White again appealed the judgment.

In the second appeal, *State v. White*, 873 S.W.2d 590 (Mo. banc 1994), this Court ruled that White's signature was sufficient verification for the pro se Rule 29.15 motion. However, the Court found both amended motions to be untimely because the motion court lacked jurisdiction to grant more than the prescribed thirty-day extension. But this Court reinstated the first amended motion because it concluded that trial counsel's failure to file a timely amended motion consti-

tuted abandonment. The Court, however, refused to reinstate the second amended motion, holding that White only had the right to one amended Rule 29.15 motion drafted by counsel. The Court also found that the motion court had failed to address all claims set forth in the pro se and first amended motions. Accordingly, the Court remanded for findings of fact and conclusions of law addressing all claims in the pro se and first amended motions.

On remand, the motion court found that the issues raised in the first amended motion had been addressed in the first judgment on August 1, 1990, and entered new findings of fact and conclusions of law on the claims made in the pro se motion, denying all relief without an evidentiary hearing.

■ This Court now considers only the motion court's rulings on the allegations contained in White's pro se and first amended Rule 29.15 motions. Review of the rulings is limited to determining whether they are clearly erroneous. *Rule 29.15(j)* (1988). Where the trial court makes findings of fact and conclusions of law, a proper result will be affirmed even if one of the conclusions is in error. *State v. Bradley*, 811 S.W.2d 379, 383 (Mo. banc 1991) (per curiam).

## II.

White argues that the trial court erred in refusing to grant an evidentiary hearing on the numerous claims of ineffective assistance of counsel raised in his Rule 29.15 motions. An evidentiary hearing is not required where "the motion and the files and record of the case conclusively show that movant is entitled to no relief[.]" *Rule 29.15(g)* (1988).

A Rule 29.15 motion is subject to requirements of timely filing and limitations on amendments. *Rule 29.15(b)(f)* (1988). Moreover, such motion must be substantially in the form provided by Form 40. *Rule 29.15(b)* (1988). Paragraph 8 of Form 40 requires a movant to state "concisely all the grounds known to you for vacating, setting aside or correcting your conviction and sentence." Paragraph 9 of Form 40 requires a concise statement of "the facts which support each of the grounds set out in (8), and the names and addresses of the witnesses or other evidence upon which you intend to rely[.]" Once counsel is appointed, "[i]f the motion does not assert sufficient facts ... counsel shall file an amended motion which sufficiently alleges the additional facts and grounds." *Rule 29.15(e)*. The redundant requirement to plead facts makes clear that a Rule 29.15 motion is no ordinary pleading where missing factual allegations may be inferred from bare conclusions or implied from a prayer for relief.

■ A Rule 29.15 motion is treated differently than pleadings in other civil cases because it is a collateral attack on a final judgment of a court. While courts are solicitous of post-conviction claims that present a genuine injustice, that policy must be balanced against the policy of bringing finality to the criminal process. Requiring timely pleadings containing reasonably precise factual allegations demonstrating such an injustice is not an undue burden on a Rule 29.15 movant and is necessary in order to bring about finality. *See Fields v. State*, 572 S.W.2d 477, 483 (Mo. banc 1978). Without requiring such pleadings, finality is undermined and scarce public resources will be expended to investigate vague and often illusory claims, followed by unwarranted courtroom hearings. For that reason, it has been held that no evidentiary hearing will be required unless the motion meets three requirements: "(1) the motion must allege facts, not conclusions, warranting relief; (2) the facts alleged must raise matters not refuted by the files and records in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993). Thus, to obtain an evidentiary hearing on claims of ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing (1) that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) that he was thereby prejudiced. *See Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because none of White's allegations satisfy this stan-

dard, his motion was properly overruled without an evidentiary hearing.

### A.

◼ White alleges counsel was ineffective in that:

[He] required and compelled movant to take the witness stand ... to condone, verify and/or sanction trial counsels [sic] trial strategy, i.e., what witnesses to call, what questions to ask and what evidence [sic] to marshall [sic] in general. This improper conduct of counsel impermissably [sic] invaded the provence [sic] of the attorney client [sic] relationship and exposed movant to cross-examination by the state. Said conduct was prejudicial to movant.

◼ The pleadings purport to allege improper conflict of interest between movant and trial counsel. Inherent in every criminal case is counsel's desire to protect himself from future claims of ineffective assistance of counsel and the defendant's desire to preserve claims of ineffective assistance of counsel in the event of conviction. It is not improper for counsel to take steps to protect his own interest if in doing so, he does not disclose confidences of his client which harm the client's interest. There is no per se rule that prejudice will be presumed when counsel makes a record that has the effect of refuting subsequent claims of ineffective assistance of counsel. As with other matters, a post-conviction pleading asserting ineffective assistance of counsel must allege facts showing what counsel did or said that was improper and facts showing how the movant was prejudiced. Here counsel is faulted for having asked movant on a number of occasions if movant agreed with unspecified strategic decisions of counsel. Aside from conclusions, no specific information disclosed by the questioning is alleged in the pleadings. Neither is there any allegation as to how such disclosure might have harmed movant so as to undermine confidence in the outcome of the trial. Such conclusions, without more, do not assert either ineffective representation or prejudice. Movant did not plead facts entitling him to relief on this issue. Thus, he was not entitled to an evidentiary hearing.

### B.

◼ White alleges he was denied effective representation of counsel because one of his attorneys represented other, unrelated, capital defendants simultaneously. He alleges that one of his trial attorneys "was unable to devote his full time and attention to movants [sic] trial due to proceedings being conducted in other forums at the same time as movants [sic] trial, thus resulting in [the attorney] leaving movants [sic] murder trial while court was in session to attend other proceedings." In denying this claim, the motion court concluded:

[M]ovant's allegation ... fails to allege how he was prejudiced by counsel's representation of other clients while movant's trial was in progress, nor has movant alleged any facts regarding counsel's supposed conflict of interest. Movant's allegation is especially meritless considering that he was also represented at trial by [a second attorney], about whom movant has not made any allegation of conflict of interest.

This conclusion is not clearly erroneous as appellant's contention is refuted by the record. White fails to acknowledge the fact that he was represented by two trial attorneys. White's claim would lead one to incorrectly believe he was represented by only one. White fails to challenge co-counsel's representation during the periods in which one of his attorneys was allegedly absent. White also fails to set forth with specificity how he was prejudiced by the attorney's absence. The motion court properly rejected this claim without a hearing.

### C.

◼ White contends trial counsel was ineffective in the following regard:

[C]ounsel engaged in unethical and improper conversation with the victims [sic] immediate family members. Said conversations involved discussions by defense counsel concerning the merits of movants [sic] defense and movants [sic] trial strategy, all to the prejudice of movant. Defense counsel knowingly violated the attorney-client [sic] relationship by divulging

the aforestated, and this conduct is move [sic] grevious [sic] when defense counsel knew or reasonably should have known that the victims [sic] family members were relaying all information to the States [sic] attorney.

The motion court rejected White's claim on the basis that no showing of prejudice was made. The court properly denied an evidentiary hearing on this claim as White's allegations are merely conclusions and speculation.

By reading the pleadings, one is unable to discern what was said by counsel that was unethical or improper or what tidbits of trial strategy were communicated that might conceivably have prejudiced the movant. White's own brief demonstrates the speculative nature of the claim where he says,

> If Mr. White's attorney was, in fact, discussing the merits of Mr. White's defense, and his trial strategy with members of the family and if he knew, or reasonably should have known, that the family members were conveying that information to the prosecutor, then counsel was guilty of an unethical breach of loyalty to his client.

(Emphasis added.) To obtain an evidentiary hearing, a movant must allege facts, not speculative conclusions, warranting relief. Starks, 856 S.W.2d at 336. As White does not specify what was disclosed to the victim's family members, he fails to show that but for the disclosures, the outcome of the trial may have been different. Because of the failure to allege these facts, the motion court properly denied the claim.

#### D.

■ White contends that counsel was ineffective for failing to conduct pre-trial interviews or depositions of key witnesses, including Carol Kinney, Earnest Black, Deonta Kinney, and Raymond Kinney.

In its findings of fact and conclusions of law, the motion court found that defense counsel adequately utilized alternatives to conducting interviews and depositions of the eyewitnesses:

> In this case, while defendant's attorney's [sic] had not talked to the eyewitnesses in this case or deposed them, they had state-

ments given by those witnesses in the police reports, as well as depositions given by those same witnesses in the defendant's and co-defendant's cases[,] either of which could have been used to impeach those witnesses if they thought it the correct strategy to utilize. The trial transcript is replete with instances with which defense counsel used these depositions and police reports to impeach the State's witnesses.

■ No challenge is made to the trial court's finding of the existence of depositions from other cases and police reports containing statements of the witnesses. The record plainly supports the motion court's finding on this issue. In view of the availability of depositions from other related cases and statements of witnesses in investigative reports, the motion court correctly found that the attorneys' failure to interview and depose witnesses does not amount to ineffective assistance of counsel. There is a strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment. State v. Stepter, 794 S.W.2d 649, 657 (Mo. banc 1990) (citing Strickland, 466 U.S. at 689, 104 S.Ct. at 2065). White has failed to allege facts that take this case outside the presumption that his attorneys' decision not to conduct a more probing investigation of the witnesses was something other than a reasonable choice of strategy.

■ In addition, the pleadings fail to allege facts that, if true, would entitle movant to relief. Specifically, White fails to identify what the attorneys would have discovered, that was not otherwise known to trial counsel, had they interviewed and deposed the witnesses. White argues in his brief on appeal that had his attorneys interviewed and deposed Raymond and Deonta Kinney, counsel would have discovered that the children had identified another man, A.J., as the killer. However, the motion suggests only that one of three assailants was not movant. How that exculpates movant is not explained.

Finally, the trial transcript directly refutes an inference that White's trial attorneys were unaware of what the children knew about the crime. Raymond Kinney was called to testify as a defense witness. Ray-

mond testified that he and Deonta were in bed when the incident took place. Their bed was in a separate room from where the assaults and murder took place. The lights were off in the bedroom. Raymond saw one assailant and that person spoke with a Jamaican accent. Raymond further testified that the defense attorneys had brought him to court on a previous occasion to look at White and at that time Raymond did not recognize White. Apparently, White's counsel was aware that Raymond would testify favorably and had seen and talked to him prior to trial. These facts refute White's suggestion that his attorneys failed to interview the children or take steps to determine what the children knew about the crime.

Because White failed to allege what facts, if any, would have been developed by a more extensive interview or deposition of witnesses and how that would have aided movant, the pleading fails to allege facts entitling him to relief on these grounds. Moreover, the claim is refuted by the record.

### E.

■ In his first amended motion, White makes the following allegations:

D. That counsel *failed to ... adduce testimony* from [Ben ] Kinney during trial that the victim of the murder, Don Wright, or his girlfriend—eye witness [sic] and co-victim, Carol Kinney were drug dealers of cocaine to establish that others could have committed these offenses[.]

E. That counsel *failed to adduce testimony* from Ben Kinney that Ben Kinney and Don Wright sold drugs for two men by the names of AJ and Josh; this was relevant because AJ and Josh had threatened Ben Kinney and Raymond and Deonat [sic] Kinney had identified AJ as the second perpetrator of this murder; this conflicted with Carol Kinney and Earnest Black saying that the second perpetrator was Movant[.]

F. That counsel *failed to adduce testimony* from Deonat [sic] and Raymond

Kinney that AJ was the second perpetrator of this murder not Movant[.] (Emphasis added.)

■ All three paragraphs assert the obvious and irrefutable truth that defense counsel "failed to adduce testimony" favorable to movant. The question remaining is whether the bare allegation of counsel's failure to adduce certain testimony entitles movant to any relief. Clearly, the answer is no. "[T]o prevail on a claim of ineffective assistance of counsel due to counsel's failure to call a witness to testify, the movant must show that the witness would have testified if called and that the witness's testimony would have aided the movant's defense." *State v. Johnson*, 901 S.W.2d 60, 63 (Mo. banc 1995). The burden is on movant to plead facts, not conclusions, establishing not only who the witnesses were but what they would testify to, if called, and that such evidence would provide a viable defense. White's pleadings stop short of directly alleging what the witnesses would testify to, if called. As such, they are deficient and no hearing was required on these claims.

The requirement that a movant directly allege facts to which the witnesses would have testified, if called, is more than a technicality. In every post-conviction case, it may truthfully be said that there are innumerable witnesses whose favorable testimony on a myriad of issues was not adduced by trial counsel. The subtle wording "counsel failed to adduce" suggests what witnesses might say without directly stating that they were available and would have testified favorably to movant, if called. To declare such pleading to be sufficient would permit a post-conviction litigant and lawyer to sandbag the State and the motion court with numerous unsubstantiated claims of deficient performance of trial counsel in failing to "adduce" testimony from witnesses. The State would then be put to the task of having to investigate what the witnesses would say, and the court would be required to hold a hearing, even though there may not be a scintilla of evidence that the witnesses were available to testify and that they would, in fact, testify favorably to the movant. Meanwhile, the post-conviction movant and the post-convic-

tion counsel could truthfully say they had made no misrepresentation of fact to the court, which would subject them to sanctions under the Rules of Civil Procedure or, in the case of a lawyer, sanctions pursuant to the Rules of Professional Conduct.[1] To hold such allegations sufficient would turn the pleadings process into clever gamesmanship.

Finally, even if one assumes the motion alleged that one or both of the Kinney children, if called to testify, would have identified A.J. as one of the three assailants, the allegations are still insufficient. All that may be said of such assumed testimony is that one of three assailants was not movant. No facts are asserted showing movant was not one of the other two persons who committed the murder, and no facts alleged explain how the testimony of the children would tend to exculpate White.

### F.

■ White alleges that "counsel failed to attack the pretrial identification of Movant by Carol Kinney or the in-court identification of Movant by Carol Kinney or Earnest Black by way of a Motion to Suppress when the identification procedures utilized by police were unnecessarily suggestive and conducive to an irreparable mistaken identification[.]" What these allegedly "suggestive and conducive" procedures were, however, is not specified in the motion. The motion fails to provide sufficient factual allegations to support the conclusion that the police used improperly suggestive identification. As such, the pleading is deficient and this claim was properly denied without a hearing.

### G.

■ White alleges that his trial attorneys were ineffective because they failed to impeach witnesses Black and Kinney with "prior inconsistent statements." This allegation, even if true, is insufficient to warrant relief.

■ Failure to impeach a witness with a prior inconsistent statement does not, per se, constitute deficient performance of counsel. *See, e.g., Roberts v. State,* 775 S.W.2d 92, 94–95 (Mo. banc 1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1506, 108 L.Ed.2d 640 (1990). A defense attorney may decide not to impeach a witness as a matter of trial strategy. *Id.* White's pleadings fail to specify the nature or content of the alleged "prior inconsistent" statements. A bare allegation that certain witnesses made "prior inconsistent" statements without stating what was said and how it conflicted with what was testified to at trial is a conclusion, not a fact. Many inconsistent statements are so insignificant as to be meaningless and others are so easily explainable as to not justify being presented at trial. Because White fails to disclose the content and circumstances of the supposed inconsistent statements, he provides no factual basis for a finding of either inadequate representation or prejudice under the *Strickland* test. Because White failed to allege facts entitling him to relief, the motion court properly denied this point without an evidentiary hearing.

■ Moreover, the record refutes White's claim that his attorneys failed to impeach Carol Kinney and Earnest Black with prior inconsistent statements. The trial transcript reveals several instances in which both Kinney and Black were questioned about prior inconsistent statements given to police, to an investigator or at a deposition. If White's claim is that his attorneys were ineffective in failing to go far enough in impeaching Kinney and Black, it must be rejected because the *extent* of impeachment is a decision of trial strategy. *See Kenley v. State,* 759 S.W.2d 340, 349 (Mo.App.1988) (per curiam), *rev'd on other grounds sub nom. Kenley v. Armontrout,* 937 F.2d 1298 (8th Cir.1991). In virtually every case, the extent of cross-examination must be left to the judgment of counsel. *Id.* The old adage

---

**1.** Rule 55.03(b) provides in part: "By presenting or maintaining a claim ... in a pleading, ... an attorney or party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that:

.....

(3) the allegations and other factual contentions have evidentiary support...."

Rule 4, Rules of Professional Conduct 3.1 provides in part: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous...."

among trial lawyers that "you only need to prove a witness is a liar once" has particular application here.

### H.

White contends that counsel was ineffective in his cross-examination of witness Earnest Black, resulting in the witness identifying appellant as one of the perpetrators. White also alleges that counsel was ineffective in not making a motion to suppress the in-court identification. On this claim, the motion court concluded as follows:

> It is clear from the transcript that counsel's cross examination of Black was precisely in line with the trial strategy of misidentification. Black identified movant in-court [sic] on direct examination and it was clearly counsel's strategy to draw attention to the fact that Black had never been able to identify him before. It is also difficult to see how movant was prejudiced by this questioning since Black had already identified movant on direct as had Carol Kinney both before and at trial. At most, therefore, Black's response to counsel's questions was cumulative.

The ruling of the motion court is not in error. White has not alleged facts that would warrant relief if true. Review of the record demonstrates that defense counsel sought to show that the witness had misidentified White. Black had testified on direct examination that White "looks like the second man" involved in the murder. Counsel's cross-examination of Black regarding his confidence in his identification of White as one of the perpetrators was consistent with defense counsel's misidentification theory. Counsel's decision to cross-examine Black in this manner was a strategy decision, which will not support a finding of ineffective assistance. *See State v. Storey,* 901 S.W.2d 886, 893 (Mo. banc 1995). Furthermore, in light of Mr. Black's and Ms. Kinney's other identifications of White, the cross-examination complained of by White would not have resulted in prejudice.

### I.

White alleges that counsel was ineffective for failing to object to the presentation, at trial, of a videotape lineup in which he was identified by State's witnesses before trial. White's reliance on *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987), is misplaced. In *Seever,* the State's witness, a child, made a videotaped statement detailing her account of defendant's sexual contact with her. At trial, the State called the victim to testify, after playing her videotaped statement for the jury. The Court held that the showing of the video was improper bolstering. *Id.* at 441. Unlike *Seever,* the videotape at issue in this case was not testimony offered to duplicate that of a witness. Rather, the videotape was admissible evidence of the circumstances of the initial out-of-court identification. The motion court did not err in finding that the trial court would have overruled this objection. Trial counsel cannot be deemed ineffective for failing to object to admissible evidence. *See Clemmons v. State,* 785 S.W.2d 524, 529 (Mo. banc 1990), *cert. denied,* 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990).

### J.

White argues that his attorneys were ineffective in failing to call an expert to testify on the effect of drug use on the mind in regard to receiving, processing and interpreting information. According to White, "[h]ad counsel presented said expert testimony[,] the jury could have reasonably found that the incourt [sic] identification of movant was not reliable due to the witnesses [sic] admitted drug consumption and influence at the cogent times."

White fails to allege sufficient facts to establish that trial counsel's performance was deficient. "To support a charge of ineffective assistance of counsel based on failure to secure the testimony of an expert witness, at a minimum, movant is required to show what the evidence would have been." *State v. Twenter,* 818 S.W.2d 628, 636 (Mo. banc 1991). Here, White does not specify what an expert's testimony would have been, but speculates that upon some presumed testimony the jury "could have easily found" the in-court identifications unreliable.

White also fails to allege facts establishing prejudice. White's attorneys made drug use of the witnesses an issue without expert testimony. Both Ms. Kinney and Mr. Black admitted on the stand that they had taken drugs before the killing and were cross-examined on the issue of how the drug use affected their perceptions. Thus, even if true, this allegation does not entitle White to relief as it fails both prongs of the *Strickland* test.

### K.

White claims that "counsel failed to object to the State withholding and supressing [sic] evidense [sic]" that "[t]he State had shown witness[es] Kinney and Black a photograph of [White] prior to these witnesses making an identification. . . ." But, as White says in his motion, this allegedly withheld evidence came to light during trial. As the motion court found, both Ms. Kinney and Mr. Black were cross-examined on their failure to identify White from the photograph. Furthermore, White admits that his attorneys were informed about the photo by his previous attorney. Thus, White fails to allege facts establishing that he was prejudiced by his counsel's failure to object to the State's alleged withholding of evidence. The motion court did not err in denying this point without an evidentiary hearing.

### L.

In White's pro se motion, he claims that his trial counsel was ineffective for failing to call an alibi witness. This allegation again fails to allege facts entitling movant to relief. White provides no details other than the name of the witness and the unsupported claim that the witness would provide an alibi. White fails to set forth what the alleged witness would testify to, if called, and fails to describe how the witness's testimony would provide an alibi. White has failed to allege any facts showing (1) that the witness could have been located through a reasonable investigation, (2) what the witness would have testified to if called, and (3) that the witness's testimony would have provided a viable defense. *State v. Ramsey*, 864 S.W.2d 320, 340 (Mo. banc 1993), *cert. denied*, 511 U.S. 78,

114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). As such, the motion court did not err in denying an evidentiary hearing on trial counsel's failure to call White's alleged alibi witness.

### M.

White alleges that counsel was ineffective for "fail[ing] to object to the court informing members of the venire that the governor could pardon Movant[.]" White's claim that the trial court erred in giving such an instruction was rejected on direct appeal. *White*, 813 S.W.2d at 865. Thus, the motion court did not err in finding that an objection to the court's statement would have been meritless.

### N.

White contends that counsel rendered ineffective assistance upon failing to object to the State's improper voir dire, wherein the prosecutor did not limit the questioning to the general circumstances of the offense but instead provided specific details in order to predispose the jurors. "We do not permit counsel . . . to try the case on voir dire by presentation of the facts in explicit detail." *State v. Antwine*, 743 S.W.2d 51, 58 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). However, a revelation of some portion of the facts of a case during voir dire is necessary to ascertain whether a potential juror's views would substantially impair his ability to be impartial and perform his duties in accordance with the court's instructions. *State v. Gray*, 887 S.W.2d 369, 382 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). White "fails to identify any statements by the State that were either argumentative or prejudicial in the context in which they were made." *Antwine*, 743 S.W.2d at 59. Without alleging any facts showing prejudice, White fails to establish that the State's voir dire was improper. *See id.* Hence, failure to object to the State's voir dire cannot provide a basis for a claim of ineffective assistance of counsel. The motion court properly denied this point.

## O.

White contends that trial counsel was ineffective in that he wasted a peremptory strike on a venireperson the trial court had already excused for cause due to illness. White fails to allege prejudice based on counsel's use of the peremptory strike. He must allege facts demonstrating that but for counsel's allegedly deficient performance, the result of the trial would have been different. *See Storey,* 901 S.W.2d at 893. Because White makes no such allegation, White is entitled to no relief on this claim.

## P.

White alleges that "counsel failed and refused to conduct any meaningful voir dire examination, and failed and refused to make any objections ... to the states [sic] request for jurors being struck for cause.... Counsel also failed to make any effort to rehabilitate potential jurors who spoke ambiguously as to their position concerning the imposition of the death penalty." White, however, fails to specify what was deficient about counsel's voir dire examination. The motion is also silent as to which strikes counsel should have objected to, and which jurors counsel should have attempted to rehabilitate. Because White has failed to plead any specific information, his pleading does not warrant relief.

However, the motion court found that White had alleged sufficient facts to allow a judgment on this issue as to one juror. The court further found that this juror had expressed a substantial inability to impose the death penalty and was properly struck for cause. The juror in question said that he was opposed to the death penalty for religious reasons and could not consider the death penalty. It was proper to strike this juror for cause. *See State v. Six,* 805 S.W.2d 159, 166 (Mo. banc 1991), *cert. denied,* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). The motion court did not err in concluding that objecting to the strike of this juror would have been fruitless.

## Q.

White alleges counsel's ineffectiveness for failing to object to the trial court's voir dire examination wherein the court asked whether jurors could consider sentencing White to death, rather than asking whether they could consider the entire range of punishment. The record clearly refutes White's claim. The court examined certain venirepersons on their ability to consider the range of punishment. The court examined several venirepersons, using essentially the same phrasing each time: "If the jury finds the defendant guilty of murder in the first degree, the only possible sentences are life in prison without parole and the death sentence. Would you be able to consider both of those punishments?" Thus, the record refutes White's allegation by reflecting that the court asked whether the venireperson could consider the range of punishment. The motion court properly denied this claim.

## R.

White contends that counsel was ineffective in not challenging the fact that voir dire had been conducted off the record, by a judge other than the trial judge, and without appellant being present. White alleges that, as a result, he "was denied a full and complete transcript from which to perfect his appeal." This allegation is clearly refuted by the record, which includes a transcript of the voir dire proceeding. White does not specify what portions of the voir dire proceeding are missing from the trial transcript. Though White alleges that he was not present at some portion of the voir dire, he fails to identify at what stage he was purportedly absent. He does not contend that he was not present for any portion of the general or death qualification phases of the voir dire. Therefore, as the motion court concluded, White does not allege prejudice with any specificity and his claim, therefore, does not warrant a hearing.

## S.

White contends that counsel rendered ineffective assistance "when counsel failed and refused to properly object to the court reading instructions to the jury, that only became proper at the close of evidense [sic], during voir dire." The motion court concluded the claim was meritless, finding:

[T]he transcript clearly shows that all instructions were read at the appropriate time, and movant has failed to show how this has prejudiced him. The only instruction which was read at an irregular time was the instruction explaining what an objection being sustained meant, which was reread, because a juror didn't understand it the first time it was read.

Without identifying the instruction that was purportedly improperly read, and without any supporting authority, White contends that the motion court's finding is clearly erroneous and that "without a hearing it is impossible to know why counsel failed to object and whether the jurors unduly emphasized this instruction to Mr. White's detriment." The record reveals no patently improper instruction during voir dire. White fails to allege facts, not refuted by the record, warranting relief. In the absence of such factual allegations, he is not entitled to an evidentiary hearing.

### T.

White contends that counsel was ineffective in not making a proper objection during voir dire when the State's attorney advised the jury of his opinion as to what constituted first degree murder, thereby placing impermissible legal theories before the jury.

The motion court correctly concluded that counsel's objection to the State's comments would have been overruled. It is clear from the page of the transcript that movant references that, at most, the prosecutor gave an example of the types of crime that would carry a possible death sentence. Nowhere does the prosecutor say what he thinks first degree murder is. Moreover, White fails to allege facts establishing that he was prejudiced by the prosecutor's comment.

### U.

■■■ White alleges that counsel "failed to take the necessary steps to preclude the jury, witnesses and the general public from being able to overhear each and every bench conference ... [which] without question prejudiced" him. White does not, however, describe the substance of the bench conferences. The motion court correctly found that this allegation was insufficient because White fails to specify the allegedly prejudicial substance of the bench conferences. The court did not err in denying a hearing on this issue.

### V.

■■■ White alleges that "counsel failed and refused to request that the court instruct the jury on the lesser included offenses of second degree murder and manslaughter when such instructions were supported by the evidence." A court is required to instruct on lesser included offenses only if the evidence provides a basis for both an acquittal of the greater offense and a conviction of the lesser offense. § 556.046, RSMo 1994; *State v. Mease,* 842 S.W.2d 98, 110–11 (Mo. banc 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993). White fails to point to any evidence that provides a basis for both an acquittal of first degree murder and a conviction of lesser offenses of second degree murder and manslaughter. Therefore, he has failed to allege facts showing that had counsel requested the instructions on these lesser included offenses, the instructions would have been given.

### W.

White alleges that his counsel was ineffective for failing to object to the mitigating circumstances instruction given to jurors at the penalty phase of his trial because it was contrary to *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), which held that jurors could not be confined to consideration of mitigating circumstances that the jury found unanimously. *Id.* at 375, 108 S.Ct. at 1865–66. In his motion and brief, White fails to specify which instruction violated *Mills* and how it was violated. This Court can find no such error. Because no mitigating circumstances were presented, the following modified version of MAI–CR3d 313.46 was given regarding the death penalty:

> You are not compelled to affix death as the punishment even if you have found existence of one or more aggravating circumstances. You must consider all the circumstances in deciding whether to assess and

declare punishment of death. Whether that is to be your final decision rests with you.

This instruction clearly does not violate the mandate of *Mills.*

### X.

White claims that the trial counsel was ineffective for "fail[ing] to object to all aspects of the State's penalty phase argument since at no time was the argument directed to those aspects of *this* crime or *this* Movant which would justify a sentence of death[.]" This allegation fails to specify how the State's penalty phase argument violates the "wide latitude" allowed in such arguments. *State v. Shurn,* 866 S.W.2d 447, 463 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). White fails to plead facts demonstrating that counsel's objection would have been meritorious.

### Y.

White alleges that his trial counsel was ineffective "[w]hen counsel failed to request the court to instruct the jury that the testimony of a drug addict should be taken with care and caution." White fails to identify which witnesses he claims to be drug addicts in this paragraph of his motion. Moreover, White fails to cite any authority establishing that, if a witness were shown to be a drug addict, White would be entitled to such an instruction. Ordinarily, judges are forbidden from making comments on the evidence. Thus, White's allegation, even if true, would not warrant relief.

### Z.

White claims that his counsel was ineffective for failing to object to the imposition of the death penalty in that Missouri's death penalty statute places unconstitutional discretion in the prosecutor. This Court has already rejected this constitutional claim. *See State v. McMillin,* 783 S.W.2d 82, 101–02 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). The motion court did not err in finding that had trial counsel objected, the trial court would have properly overruled the objection.

### AA.

White alleges that counsel provided ineffective assistance in failing to object to the State's opening statement wherein the prosecutor said that the evidence would show that White was involved in an ongoing and existing conspiracy.

The prosecutor's opening statement was not improper. White was charged with knowingly causing the death of Don Wright "by asphyxiating, cutting and stabbing him" and that such crime was committed by White "either acting alone or knowingly in concert with others...." One of the purposes of the opening statement is to inform the defendant of the contemplated course of the prosecution to enable him to fairly meet the charges. *State v. Murray* 744 S.W.2d 762, 774 (Mo. banc 1988), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). References during opening statement to arguably admissible evidence made in good faith with a reasonable expectation that the evidence will be produced are not grounds for reversal. *State v. Harris,* 870 S.W.2d 798, 809 (Mo. banc 1994), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Review of the trial transcript refutes White's contention that no evidence supported the prosecutor's statement that White conspired with others. Evidence was adduced from which it may be inferred that White and his two accomplices perpetrated a planned robbery and murder. Here, the prosecutor's opening statement was not improper because it placed before the jury and the defense the State's theory of the case. *See id.* Hence, this claim does not entitle White to any relief.

### BB.

White alleges that counsel was ineffective in allowing the victim's mother and brother to remain in the courtroom, thereby allowing them to alter their expected favorable testimony. Neither witness was called to testify at trial. White does not state how the witnesses' expected testimony was changed. As the motion court correctly found, White fails to show how he was preju-

diced by the presence of these witnesses in the courtroom.

### CC.

Subject to certain exceptions, a motion court must issue findings of fact and conclusions of law on all issues presented. *Barry v. State,* 850 S.W.2d 348, 349–50 (Mo. banc 1993); *Rule 29.15(i)* (1988). White claims that the motion court did not address three of his claims.

Contrary to White's contention, the motion court did in fact enter findings and conclusions on White's allegations relating to failure to interview State's witnesses and failure to object to the judge's statements regarding the governor's authority to pardon. These claims are addressed above.

 White also alleges that counsel was ineffective when "counsel, without movants [sic] consent or knowledge, agreed to allow the trial court to instruct the jury that in a previous case, another defense attorney had in fact lied and misled a previous jury."

 The motion court apparently did not address this one allegation of ineffective assistance of counsel. While *Barry* concludes that Rule 29.15 requires findings of fact and conclusions of law on every issue, it also acknowledges that not every failure to enter a finding of fact or a conclusion of law requires reversal and remand. 850 S.W.2d at 350. There are some common sense exceptions. For example, no finding of fact is necessary where the only issue is one of law. *Id.* In addition, an appellate court will not order a useless remand to direct the motion court to enter a proper conclusion of law on an isolated issue overlooked by the motion court where it is clear that movant is entitled to no relief as a matter of law and will suffer no prejudice by being denied a remand. *See State v. Stallings,* 812 S.W.2d 772, 779 (Mo. App.1991).

In this particular case, White's claim is refuted by the record. The trial record reveals no oral or written instruction by the judge to the jury that in any earlier case, an attorney had lied to a jury. Thus, the pleadings and record conclusively show that relief was properly denied. Inasmuch as the motion court made extensive and specific findings and conclusions on every claim but one and the only claim upon which a necessary conclusion of law was omitted was a meritless allegation, reversal and remand are not warranted.

### III.

In his appeal, White raises, for the first time, three claims not raised in his Rule 29.15 motions. All three fail.

### A.

Judge Randall presided over White's first Rule 29.15 proceeding. In the first appeal, this Court remanded for a hearing to determine whether White had been abandoned by post-conviction counsel. Several days before the hearing, the judge had a conversation with the prosecuting attorney regarding the scope of the proceeding. White calls this conversation an improper ex parte communication, which gave rise to such an appearance of bias that the judge should have disqualified himself, sua sponte.

This argument is moot. The judge's determination that White had not been abandoned was overturned by this Court on White's second appeal. Attempting to revive this conversation as an issue, White notes that the judge's original rulings on the first amended Rule 29.15 motion are still before this Court. This is true, but that judgment was rendered on August 1, 1990, and the allegedly improper conversation occurred over one year later, in October or November of 1991. While we expect judges in this state to show foresight, it is a bit much to expect a judge to disqualify because of a conversation that is to occur more than one year in the future.

When the first motion judge made rulings relevant to the current appeal, no hint of bias existed. Therefore, he was under no duty to disqualify himself.

### B.

Three weeks after the jury was discharged, the trial judge held a hearing in chambers, where a juror testified that he thought he might have gone to high school

with a man who sat in the courtroom during the trial. Apparently, this man was a family member of one of the victims. The juror testified that he had not associated the man with either side of the case and had not spoken with or acknowledged him during the trial.

▓ Although White did not raise this issue in his direct appeal or assert it in his Rule 29.15 motion, he now asks this Court to conduct a plain error review. Plain error review may be considered "on appeal." *Rule 84.13(c)*. This is not an appeal of White's conviction. Rather, this is an appeal of the post-conviction proceeding. Our standard of review here is whether the post-conviction court "clearly erred" in denying relief in the post-conviction proceeding. Since the issue was never raised in the post-conviction proceeding, error by that court, plain, clear or otherwise, is not discernible.

▓ The only possible basis for considering the claim is under a claim of ineffective assistance of appellate counsel in the original appeal for failing to raise an issue which amounted to plain error. For purposes of discussion, we will assume that the issue is raised as a motion to recall the mandate.

In his brief, White asserts that if he had been present at the hearing, he "could have contributed to the outcome of the hearing, outlining for his attorneys the misconduct he had witnessed." However, the brief does not set forth that he actually observed any misconduct or that any misconduct actually occurred. White's absence from the hearing did not result in a manifest injustice or miscarriage of justice, and counsel's failure to raise such issue on appeal cannot be characterized as ineffective assistance of appellate counsel. This claim is denied.

### C.

▓ White finally contends that the time limits imposed by Rule 29.15 deprived him of his constitutional right to due process and resulted in arbitrary and capricious imposition of the death sentence, in violation of the constitutional prohibition against cruel and unusual punishment. White brings this claim for the first time on appeal, having failed to raise it in the motions for post-conviction relief as required by Rule 29.15(d). This point is not reviewable. *See Twenter*, 818 S.W.2d at 641. Moreover, the time limits of Rule 29.15 are constitutional, even in death penalty cases. *See State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

### IV.

White's Rule 29.15 pleadings are fatally inadequate because he fails to allege facts, not conclusions, that, if true, would entitle him to relief or because his claims are refuted by the record. The reason for this holding is clear. The purpose of an evidentiary hearing is not to provide movant with an opportunity to produce facts not alleged in the motion. Rather, the purpose is to determine if the facts alleged in the motion are true. While the trial court erred in failing to enter a conclusion of law on one matter, remanding this case to supply the single missing legal conclusion would only serve to delay finality in this case and further burden the judicial system with a claim that is meritless.

The judgment of the trial court is affirmed.

BENTON, PRICE, LIMBAUGH, ROBERTSON, and COVINGTON, JJ., concur.

WHITE, J., concurs in part and dissents in part in separate opinion filed.

WHITE, Judge, concurring in part and dissenting in part.

Today the majority places important new burdens on those who seek an evidentiary hearing to prove their claims of ineffective assistance of counsel. While I differ with the majority's interpretation of the law on the specific points outlined below, my fundamental disagreement is with the majority's approach. The majority appears to see an evidentiary hearing as an unusual event, one that is justified only in the most compelling circumstances. I cannot find justification in our rules or precedents for this approach, and I disagree with the implicit policy choice that underlies it. I see little harm in giving a

defendant, especially a death penalty defendant, one chance to present evidence that his counsel was ineffective.

Our rules encourage evidentiary hearings. An evidentiary hearing may only be denied when the record *conclusively* shows that the movant is not entitled to relief.[1] In the name of judicial economy and finality, the majority holds that the fact that a Rule 29.15 cannot be endlessly amended means that it is a specially disfavored pleading. But nowhere does the rule suggest that the motion is to be read more narrowly than any other pleading. In fact, the opposite is true. Except for the limited time in which they may be amended, post-conviction relief motions are to be treated exactly like all other civil filings.[2] If Rule 29.15 motions are to be judged by a different standard, the fact that they can only be amended in a limited way suggests to me that they should be read more, not less, broadly than other types of pleadings. I share the majority's interest in the finality, legitimacy, and efficiency of judicial proceedings. But these goals are ill-served by a pleading regime that elevates the form of pleadings over their substance. As this case shows, endless arguments about procedure are just as harmful to swift, sure justice as substantive attacks.

When the substantive claims seem especially compelling, an approach based on form rather than substantive merit is especially troublesome. In this case, the entire defense was founded on a theory of misidentification. Allegations that trial counsel did not do all they could to pursue evidence of misidentification has great power to undermine confidence in the outcome of the trial. In Section II.E. of its opinion, the majority disposes of these claims on the barest technicality: the use of the words "failed to adduce testimony" in the pleadings. The majority does not hold that Mr. White has not identified his counsel's alleged error with sufficient particularity to allow a judge to try the question, which is the purpose of the pleadings. Rather, the focus is on phrasing. As the majority highlights, Mr. White's first amended motion was hurriedly and carelessly prepared. It is not

the most polished pleading. The motion misplaces commas, misspells the names of parties and writes "eyewitness" as "eye witness." Yet the majority sees the motion as a sophisticated exercise in "clever gamesmanship." From the history of this case, it appears that Mr. White's appointed counsel was more concerned about meeting the short deadlines he was faced with when the original post-conviction counsel abandoned Mr. White than he was about using the "subtle wording" of his motion in an attempt to "sandbag the State."

The majority's comparison to a game is inapt. This is not a contest where prisoners are trying to trick the courts into giving them frivolous hearings and the courts attempt to come up with clever ways to ensure that few hearings are held. Mr. White did not seek to build his case upon the pleadings found deficient today; he offered a thorough and professional second amended motion. But because a judge mistakenly allowed that motion to be filed out of time, Mr. White was not allowed to present his strongest claims in their best light. Instead, he was forced to proceed on motions that the Court now finds were facially inadequate.

This narrow reading of the pleadings extends to the issue of prejudice. Credibility of the eyewitness testimony is at the heart of this case. But the majority is more concerned with pleading formality than whether there is evidence to support Mr. White's claim that eyewitnesses disagreed about who was present in the house. Even if the motion properly alleged that eyewitnesses would place another man at the scene, the majority holds, no sufficient allegation of prejudice would have been made because Mr. White does not also plead that he was not one of the other people present. If this allegation were true, I cannot see how Mr. White could not have been prejudiced. The witnesses the State built their entire case around would have been contradicted, by other eyewitnesses, about the identity of the assailants. The proper pleading of prejudice does not require one to foreclose every logically possible response to an allegation. The

---

1. Rule 29.15(g) (1988).

2. Rule 29.15(a) (1988).

trying and weighing of the evidence are what the hearing is for. Mr. White has properly placed his counsel's performance on the issue of witness identification into question. He should be given a hearing to see if he has any evidence to support his claim.

I would also remand to require findings and conclusions on all issues raised in the motion. This Court has properly limited appellate review of post-conviction relief motions to a determination of whether the factual findings and legal conclusions of the motion court are clearly erroneous.[3] Since the review is so limited, this Court has, in the past, required findings and conclusions on all issues raised in the motion.[4] But today, the majority abandons this rule and denies, sua sponte, a claim upon which the State admits no findings or conclusions were made. The majority justifies this by citing the "common sense exception" *Barry* described. That no findings of fact need to be entered when there are no factual disputes is axiomatic. Where, as here and in *Barry*, there has been no evidentiary hearing, the issues are exclusively legal ones. *Barry* reiterated the Court's long standing rule that, in a judgment on a motion for post-conviction relief, " 'a mere recital or statement that the motion, files and records conclusively show that movant is entitled to no relief' " is insufficient.[5] Had the motion court issued the bare conclusion that the motion, files, and records had showed that Mr. White was entitled to no relief on this issue, *Barry* would clearly be violated. I cannot see how the total silence of the motion court can provide a better platform for meaningful appellate review than the conclusory rulings *Barry* explicitly forbids.

In many cases, the motion court's rulings are worse than conclusory, they are clearly erroneous. Again, this is most clearly shown in relation to the motion court's ruling on the issue of possible testimony that another perpetrator committed the crime. On that issue, the motion court found:

4. Movant's claim in I(E) of his First Amended Motion that his counsel failed to adduce testimony from Ben Kinney that he and Don Wright sold drugs for two black men by the names of A.J. and Jose because they had threatened to kill Ben Kinney. Counsel is under no obligation to use impeachment material that he knows is improper. Allegations of crimes which have not resulted in criminal convictions are not proper impeachment. See *State v. Stephens*, 672 S.W.2d 714 (Mo.[App.]1984); *State v. Coats*, 668 S.W.2d 119 (Mo.App. 1984). Also, this line of cross examination would also not be proper because, it is not proper to cross examine so as to show other persons had motive for crime [sic] without evidence connecting other person [sic] to crime [sic]. *State v. Easley*, 662 S.W.2d 248 (Mo. banc 1983); *State v. Wynn*, 666 S.W.2d 862 (Mo.App.1984).

5. As to movant's claim in 1(F) in his First Amended Motion that his counsel should have adduced that his counsel should have adduced testimony from Deonat [sic] and Raymond Kinney that A.J. was the second perpetrator and not movant, is not a claim with merit because there is no showing of any affirmative evidence that A.J. was connected with this crime as mandated in *State v. Easley*.

Apparently, the crucially deceptive effect of the phrase "failed to adduce" was quite lost on the motion court. The court also did not find that the alleged failure to discover contradictory eyewitness testimony resulted in no prejudice. Instead, the motion court denied a hearing on the clearly erroneous theory that eyewitness testimony placing a different man at the crime scene would not have been allowable because there was no evidence that that man was connected with the crime. The majority does not attempt to defend this circular argument and, instead, substitutes its own legal conclusions for those of the trial court. The rule in *Barry* is that meaningful appellate review of Rule 29.15

---

**3.** Rule 29.15(j) (1988).

**4.** Rule 29.15(i) (1988); *Barry v. State,* 850 S.W.2d 348 (Mo. banc 1993).

**5.** *Barry,* 850 S.W.2d at 350 (quoting *Fields v. State,* 572 S.W.2d 477, 483 (Mo. banc 1978), which referred to the "nearly identical provisions" of the previous rule governing post-conviction relief, Rule 27.26).

motions is crucially dependent on the entry of legal conclusions by the motion court, even when it has had no opportunity to determine factual issues. Where the legal conclusions of the trial court depart so substantially from the law, appellate review is similarly frustrated.

As Judge Thomas eloquently wrote for a unanimous Court the last time this case was before us: "[D]eath penalty cases, often involving heinous crimes, have become clouded by arguments regarding verification and the filing of paper work. Missouri courts need to see through this blizzard of paper and technicalities that fog the underlying issues so they can reach a just and timely result, especially in death penalty cases." [6] This case has bounced back and forth between the trial court and this Court in order to answer entirely peripheral questions such as whether a fingerprint is sufficient to verify a petition and what the proper remedy is to correct a judge's mistaken grant of a filing extension. In that time, Leamon White has spent eight years on death row not getting what he deserves. Whether Mr. White deserves a new trial or a speedy execution depends upon a question that has remained completely unexplored: was Mr. White sentenced to die because he tortured and killed Don Wright or because his lawyers were more concerned about protecting themselves than their client? The only way we can get the certain answer we must have before we execute Mr. White is to give him a hearing.

I concur fully in Section III of the majority opinion. My reading of Mr. White's motion, however, convinces me that he adequately presents allegations that call into question the competence and zeal of his trial counsel. With respect, I must dissent from the denial of an evidentiary hearing.

**6.** *State v. White,* 873 S.W.2d 590, 594 (Mo. banc 1994).