

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00055-CR

RODNEY E. OWENS                                            APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Rodney E. Owens of aggravated assault with a deadly weapon, to wit: a firearm and, after finding that he is repeat offender, assessed his punishment at ninety-nine years' imprisonment and a $10,000 fine. In three issues, Owens complains that the trial court erred by admitting evidence

---

[1]See Tex. R. App. P. 47.4.

of his attempt to evade arrest and that his sentence was unlawfully enhanced with a prior military conviction. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Nekisia "Kisia" Baldwin dated Owens for eleven and a half years and had a child with him. After they broke up, Kisia began dating Reggie Lucien, who worked at Wal-Mart with her. Reggie knew Owens because Owens used to go to the Wal-Mart where Reggie and Kisia worked to see Kisia. Owens once told Kisia that he was going to hurt Reggie if he ever saw him and that Reggie "better have [his] gun because [Owens] was going to have his." Owens followed Reggie home from work one day, and at a stop light, Owens rammed his vehicle into the back of Reggie's vehicle. Reggie's vehicle went through the intersection and into the parking lot on the other side. Owens got out and yelled, "I know where you work. I'm going to kill you."

About a week later, Reggie was outside in his apartment complex with his cousin, Timaeus Duncan, watching a friend work on Timaeus's car. Owens drove up in a silver Ford Focus. He got out of the car and told Reggie to stay away from Kisia. Owens was holding a gun at his side and looked "like he wanted to attack." When Reggie saw the gun, he pulled his own gun out of his pocket and pointed it at Owens. Reggie was carrying the gun because of Owens's previous threats. Owens got back in the Ford Focus, backed up about thirty feet, then stopped, got back out, and again told Reggie to stay away from Kisia. Reggie drew his gun again, and Owens got back in the car and drove out

2

of the apartment complex. As he was driving past the complex, Reggie noticed Owens rolling down his driver's side window so Reggie yelled to Timaeus to get down. Owens fired two shots and took off.

Reggie called the police. While the police were at Reggie's apartment, Owens left a voice message on Kisia's phone telling her that she would be forgiven if she came back to him. Reggie was carrying her phone at the time, and he played the message for the officers.

First grade teacher Angela Moberley was driving to school that morning and saw a silver Ford Focus slowing down; she then heard "two boom booms" coming from the car and saw the car speed away. She never saw the driver of the car.

Later that month, Fort Worth Police Officer William Snow was on patrol when he noticed a silver Ford Focus parked in front of a convenience store. Officer Snow ran a license plate check and discovered that the vehicle had been stolen in Dallas County. He followed the car, and when he tried to pull it over, Owens, who was driving the car, sped up. A twenty-five-minute chase ensued, during which Owens ran several red lights and stop signs and drove up to 120 miles per hour. Owens eventually wrecked the car. He briefly ran from police officers before surrendering.

Prior to trial, the State filed written notice of its intent to enhance Owens's punishment with four aggravated assault convictions—one from a general court-martial, two from the United States Army Court of Criminal Appeals, and another

from the Army Court of Military Review.  At the punishment stage of trial, the State introduced evidence to support only the first enhancement allegation, alleging that Owens had been convicted of "the felony offense of aggravated assault, in the general court-martial, Fort Ord, California, in General Court-Martial Order Number 1, on the 7th day of January, 1991."  The jury found that Owens was a repeat offender.

### III. MILITARY CONVICTION USED FOR ENHANCEMENT

In his third issue, Owens argues that his sentence is unlawful because it was enhanced with a military conviction for "[a]ssault intentionally inflicting grievous bodily harm."[2]  According to Owens, "because the military code does not label its crimes as misdemeanors and felonies, . . . a military conviction can never be used to enhance a felony in Texas unless the military crime is punishable by death."  The State argues that Owens has not preserved his complaint for appeal and that, alternatively, Owens's prior military conviction was a felony, properly used for enhancement purposes.

Owens did not object when the State presented its Notice of Intent to Seek Finding on Repetition Allegation or when the State offered into evidence State's

---

[2]Aggravated assault is a second degree felony, ordinarily punishable by imprisonment for not more than twenty and not less than two years, as well as a fine not to exceed $10,000. Tex. Penal Code Ann. §§ 12.33, 22.02(b) (Vernon Supp. 2010).  Upon proof of a prior felony conviction, a defendant convicted of a second degree felony may be punished for a first degree felony, punishable by imprisonment for life or for not more than ninety-nine and not less than five years, as well as a fine not to exceed $10,000.  *Id.* §§ 12.32, 12.42(b) (Vernon Supp. 2010).

Exhibit 27 as proof of Owens's prior conviction. In fact, Owens's defense counsel stated that he had no objection to the exhibit. However, Owens's complaint is that his sentence is unlawful because the use of a military conviction for enhancement purposes was improper. A defendant has an absolute and nonwaivable right to be sentenced within the proper range of punishment established by the legislature. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003).[3] Consequently, we will address Owens's complaint.

The Texas Penal Code designates offenses as felonies or misdemeanors. Tex. Penal Code Ann. § 12.02 (Vernon 2003). Under the penal code, a felony is "an offense so designated by law or punishable by death or *confinement in a penitentiary*," whereas a misdemeanor is "an offense so designated by law or punishable by fine, by *confinement in jail*, or by both fine and confinement in jail." *Id.* § 1.07(23), (31) (Vernon Supp. 2010) (emphasis added). For enhancement purposes, any conviction not obtained from a prosecution under the Texas Penal Code provisions is classified as a "felony of the third degree" if punishment includes "imprisonment in the Texas Department of Criminal Justice or another penitentiary." *Id.* § 12.41(1) (Vernon Supp. 2010). The Texas Court of Criminal Appeals has held that properly proved-up court-martial proceedings are deemed

---

[3]And to the extent that Owens's complaint could be interpreted as a challenge to the sufficiency of the evidence to support the enhancement finding, his complaint need not be raised in the trial court to be preserved for appellate review. *See Moff v. State*, 131 S.W.3d 485, 488–89 (Tex. Crim. App. 2004); *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001).

final convictions and are admissible in courts of record to prove prior convictions. *See Johnson v. State*, 432 S.W.2d 98, 100 (Tex. Crim. App. 1968) ("The use of such records in proving a prior conviction of an accused has been many times approved by this Court.").

Here, Owens was convicted of an offense defined by a penal statute outside the penal code, and the offense is classified as a "felony of the third degree" if punishment includes "imprisonment in the Texas Department of Criminal Justice or another penitentiary." *See* Tex. Penal Code Ann. § 12.41(1); *Johnson*, 432 S.W.2d at 100. State's Exhibit 27 shows that the maximum punishment for the offense was five years' confinement, dishonorable discharge, total forfeiture, and reduction of rank. Owens received eleven months' confinement, bad conduct discharge, total forfeiture, and reduction of rank. Although the evidence shows only that the offense was punishable "by confinement" for up to five years (and does not indicate whether that confinement could be in a penitentiary), "[p]ersons convicted of offenses against the United States or by courts-martial punishable by imprisonment for more than one year may be confined in any United States penitentiary." 18 U.S.C.A. § 4083 (West 2000). Accordingly, the offense met the definition of a felony under penal code section 12.41. *See* Tex. Penal Code Ann. § 12.41; *see also Mosley v. State*, Nos. 05-09-01315-CR, 05-09-01316-CR, 05-09-01317-CR, 2010 WL 5375968, at *6 (Tex. App.—Dallas Dec. 29, 2010, no pet.) (not designated for publication) (holding that prior military conviction carrying imprisonment in the penitentiary as

6

a possible confinement was a felony under section 12.41 and subject to use for enhancement purposes under section 12.42). Because Owens's prior military conviction was classified as a felony under the penal code, it was properly used to establish that he is a repeat offender. *See* Tex. Penal Code Ann. § 12.42(b). Owens was sentenced within the statutory range; consequently, we hold that his sentence was not unlawful. *See id.* §§ 12.32, 12.42(b). We overrule his third issue.

## IV. EVIDENCE OF EVADING ARREST

In his first two issues, Owens argues that the trial court abused its discretion by admitting extraneous offense evidence of his evading arrest. In his first issue, he argues that the evidence was character evidence used to show his propensity for criminal activity, the admission of which was prohibited under rule of evidence 404(b). *See* Tex. R. Evid. 404(b). In his second issue, he argues that any probative value of the evidence was outweighed by the danger of unfair prejudice and confusion of the issues under rule of evidence 403. *See* Tex. R. Evid. 403. The State responds that the evidence was admissible to show Owens's consciousness of guilt and identity and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

### A. Standard of Review

We review a trial court's decision to admit or to exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert.*

*denied*, 522 U.S. 917 (1997). A trial court does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g).

### B. Relevancy of the Evidence

It is improper to try a defendant for being a criminal generally. *Alba v. State*, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995) (citing *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992)), *cert. denied*, 516 U.S. 1077 (1996). Texas Rule of Evidence 404(b) states, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, rule 404(b) also provides that extraneous offense evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* This list is illustrative, rather than exhaustive. *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004).

An extraneous offense may be admissible to show identity when identity is at issue in the case. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). Moreover, evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn. *Alba*, 905 S.W.2d at 585 (citing *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989), *cert. denied*, 494 U.S. 1039 (1990)). So long as the extraneous offense is shown to be a necessarily related circumstance of the

8

defendant's flight, it may be admitted to the jury. *Id.*; *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (holding that to exclude evidence of flight, defendant must show that his flight was "directly connected to some other transaction and further that it was not connected with the offense at trial"), *cert. denied*, 515 U.S. 1162 (1995).

Here, the complained-of evidence was relevant as a circumstance from which an inference of guilt may be drawn. *See Alba*, 905 S.W.2d at 585; *Torres v. State*, 794 S.W.2d 596, 599 (Tex. App.—Austin 1990, no pet.) ("The 'a consciousness of guilt'" exception to the general rule is alive and well in Texas."). And Owens offered no evidence to show that his attempt to evade arrest was connected to some transaction other than his assault on Reggie, such as the theft of the Ford Focus that Owens was driving. *See Bigby*, 892 S.W.2d at 883; *Burks v. State*, 227 S.W.3d 138, 149 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Finally, appellant offered no evidence and therefore failed to meet his burden to show that his flight was connected to some other transaction or offense.").

Additionally, the evidence that Owens fled from police while driving a silver Ford Focus was relevant to show identity. See Tex. R. Evid. 404(b); *Page*, 213 S.W.3d at 336; *Lane*, 933 S.W.2d at 519. Although Reggie identified Owens in a photo spread and in the courtroom as the person who fired two shots towards him, no other witnesses positively identified Owens as the shooter. As the State points out, Reggie's credibility was subject to attack because he and Owens

9

were both involved with the same woman; during closing argument, defense counsel argued, "We've heard from eight witnesses in this trial . . . . And only one of all these witnesses could actually testify as a fact witness that [Owens] is guilty of this aggravated assault, and he's the one with the dog in the fight. They were seeing the same woman." Angela, the only other eyewitness to testify, explained that the shooter was driving a silver Ford Focus, but she could not identify the shooter. Thus, testimony that Owens led officers on a high-speed chase in a silver Ford Focus a few weeks after the shooting was relevant to show identity.

We hold that the trial court did not abuse its discretion by determining that the complained-of evidence was relevant for purposes other than character conformity, specifically, to show his consciousness of guilt and his identity. *See* Tex. R. Evid. 404(b); *Montgomery*, 810 S.W.2d at 380. We overrule Owens's first issue.

## C. Probative Value of Evidence Not Outweighed by Prejudicial Effect

Having found that the evidence was relevant, we will now address Owens's rule 403 complaint. *See* Tex. R. Evid. 403. That rule provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." *Id.* "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

10

without the evidence." Tex. R. Evid. 401. "Whether extraneous offense evidence has relevance apart from character conformity . . . is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rule 403 favors the admission of relevant evidence, and it is presumed that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006). A proper rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005).

We have already explained how the evidence at issue here was probative of identity—showing that Owens was driving a silver Ford Focus weeks after the shooting—and was probative of his consciousness of guilt—showing that he attempted to flee from officers when one of them tried to pull him over. A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt. *Torres*, 794 S.W.2d at 598.

Prior to the introduction of this evidence, the trial court instructed the jury,

Jury, you are instructed that if there is any testimony or exhibits before you in this case regarding [Owens's] having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that [Owens] committed such other offenses, if any were committed, and even then you may only consider the same in determining in this case

11

flight, consciousness of guilt, and identity of [Owens], if any, in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose.

The trial court's charge to the jury also included an extraneous offense instruction that it could consider extraneous offenses only in determining "motive, opportunity, intent, preparation, plan, knowledge, identity, flight, consciousness of guilt, alleged injured party's reason to possess a firearm, or absence of mistake or accident [by Owens]." In its closing argument, the State explained that the jury could consider evidence of Owens's evading arrest as consciousness of guilt. Although the court's instructions, and the State's argument, did not necessarily preclude any potential danger of unfair prejudice or confusion of the issues, they assisted the jury in understanding the purpose for which the evidence was admitted and for which it could be properly considered.

The State called eight witnesses at trial, and two of these witnesses testified about Owens's evading arrest. Their testimony comprised approximately forty pages of a 175-page record. The State's primary witness was Reggie, who was the only person who identified Owens at trial and whose credibility was at issue. The State's only other eye-witness, Angela, could only testify that the gunshots came from a silver Ford Focus. Thus, the State needed the evidence to support Reggie's and Angela's testimony.

We hold that the trial court did not abuse its discretion by determining that the prejudicial effect of the evidence of Owens's flight from police did not

12

outweigh its probative value.  *See* Tex. R. Evid. 403; *Montgomery*, 810 S.W.2d at 380.  Consequently, we overrule Owens's second issue.

## V.  CONCLUSION

Having overruled Owens's three issues, we affirm the trial court's judgment.

SUE WALKER<br>
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 14, 2011