ACCEPTED
071600465CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/21/2017 2:36 PM
Vivian Long, Clerk

NO. 07-16-00465-CR, NO. 07-16-00466-CR
NO. 07-16-00467-CR, 07-16-00468-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH SUPREME JUDICIAL DISTRICT

AT AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
6/21/2017 2:36:12 PM

VIVIAN LONG
CLERK

ALEXANDER ELI MARTINEZ,
                          Appellant
VS.

THE STATE OF TEXAS,
                          Appellee

Appeal in Cause No. 2900
In the 287th District Court
of Bailey County, Texas

**APPELLEE'S BRIEF**

HON. KATHRYN GURLEY
DISTRICT ATTORNEY FOR BAILEY COUNTY
ATTORNEY FOR THE STATE
P.O. BOX 729
Friona, Texas 79035
State Bar No. 10022700
Telephone No.  806.250.2050
FAX No. 806.250.9053
Email: districtattorney@parmercounty.net

JULIE GOEN PANGER
ATTORNEY FOR THE APPELLANT
619 Broadway Street
Lubbock, Texas 79401
State Bar No. 24069793
Telephone No. 806.712.2889
FAX No. 806.712.2529
Email: julie@thelubbocklawyer.com

*Oral Argument Not Requested*

ALEXANDER ELI MARTINEZ,
Appellant
VS.

THE STATE OF TEXAS,
Appellee

_____

NAMES OF ALL PARTIES

_____

JUDGE PRESIDING:
HON. GORDON HOUSTON GREEN
287TH Judicial District Court
300 South 1st Street, Suite 130
Muleshoe, TX 79347

APPELLANT:
Alexander Eli Martinez
TDCJ#02094168
Lychner Unit
Humble, TX 77396

ATTORNEY FOR APPELLANT            ATTORNEY FOR APPELLANT
AT TRIAL:                          ON APPEAL:
David Martinez                     Julie Goen Panger
1663 Broadway Street               619 Broadway Street
Lubbock, TX 79401                  Lubbock, TX 79401

ATTORNEY FOR STATE
AT TRIAL AND ON APPEAL:
KATHRYN GURLEY
Bailey County District Attorney
P.O. Box 729
Friona, Texas 79035

i

# TABLE OF CONTENTS

NAMES OF ALL PARTIES ......................................................................................................i

TABLE OF CONTENTS ........................................................................................................ii

INDEX OF AUTHORITIES……………………………………………………………iii

STATEMENT OF THE CASE…………………………………………………………2

STATEMENT OF FACTS ……………………………………….………………....3

SUMMARY OF THE ARGUMENT……………………….…………………...…7

RESPONSE TO APPELLANT'S SOLE POINT OF ERROR ................................9

    I. Standard of Review .....................................................................................9

    II. Discussion. ...............................................................................................10

        (1) Affirmative Links Rule .......................................................................12

        (2) Application of Legal Sufficiency Standards to Facts of
            this case .............................................................................................14

        (3) Conclusion .......................................................................................18

CONCLUSION AND PRAYER ...........................................................................19

CERTIFICATE OF SERVICE ..............................................................................20

CERTIFICATE OF COMPLIANCE.......................................................................20

# INDEX OF AUTHORITIES

**TEXAS CASE LAW** Page

*Acosta v. State,* 429 S.W.3d 621 (Tex. Crim. App. 2014)........................................9

*Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994) .......................................16

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .......................................9

*Brown v. State*, 270 S.W.3d 564 (Tex. Crim. App. 2008),
*cert. denied*, 556 U.S.1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009).................10

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)..............................10, 16

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006)...........................12, 13, 14

*Hooper v. State,* 214 S.W. 3d 9 (Tex. Crim. App. 2007) ..........................................9

*Jackson v. Virginia*, 443 U.S. 307 (1979) .........................................................9, 10

*King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000)..............................................9

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) .......................................10

*Poindexter v. State,* 153 S.W.3d 402 (Tex. Crim. App. 2005)................................12

*Whittington v. State,* 580 S.W.2d 845 (Tex. Crim. App. 1989)
*cert. denied*, 494 U.S. 1039 (1990).......................................................................16

*Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012)..........................................10

*Wyatt v. State*, 23 S.W.3d 18 (Tex. Crim. App. 2000) ...........................................10


**TEXAS RULES AND STATUTES**

TEX. HEALTH & SAFETY CODE ANN. §481.112(a), (d)...........................................11

IN THE COURT OF APPEALS

FOR THE SEVENTH SUPREME JUDICIAL DISTRICT

AT AMARILLO, TEXAS

---

ALEXANDER ELI MARTINEZ,
                    Appellant
VS.

THE STATE OF TEXAS,
                    Appellee

---

STATE'S APPELLATE BRIEF

---

*The State does not request oral argument.*

TO THE HONORABLE COURT OF APPEALS:

COMES NOW THE STATE OF TEXAS, Appellee in Cause No. 2900 of the 287th Judicial District Court of Bailey County, Texas, and respectfully submits this brief in response to the brief filed by the Appellant appealing his convictions in Cause Number 2900 in the 287th Judicial District Court, and in support thereof, would respectfully show as follows:

**STATEMENT OF THE CASE**

In an indictment filed on October 7, 2015, the Grand Jury for the 287th Judicial District Court of Bailey County, Texas, indicted the Appellant, Alexander Eli Martinez, on four counts:

> Count I – Possession with Intent to Deliver a Controlled Substance, namely cocaine, in an amount of four grams or more but less than 200 grams
>
> Count II – Possession with Intent to Deliver a Controlled Substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams
>
> Count III – Possession of Marijuana, in an amount of five pounds or less but more than four ounces
>
> Count IV – Possession of a Controlled Substance, namely methamphetamine, in an amount of one gram or more but less than four grams.
>
> (CR 5-6)

A jury trial was held beginning September 27, 2016, where Martinez pleaded "not guilty" before the jury. (RR vol. 2, pg. 10-11). On September 28, 2016, the jury found Martinez "guilty" on all four counts. (RR vol. 5, pg. 42). On Counts I, II, and IV, the jury assessed punishment at five years confinement in the Institutional Division of the Texas Department of Criminal Justice and recommended that the imposition of sentence be suspended. In Count III, the jury assessed punishment at two years confinement in the State Jail Division of the Texas Department of Criminal Justice. This sentence was imposed. The district

court certified Martinez' right to appeal. (CR pp. 44-45) (RR vol. 5 pg. 48). Appellant timely filed a notice of appeal. (CR pg. 69).

## STATEMENT OF FACTS

An investigation into the distribution of narcotics from 301 East Chicago, Muleshoe, Texas, began in September of 2014. (RR vol. 3 pg 35). The residence had been placed under surveillance, and a confidential informant was utilized. (RR vol. 3 pp. 35, 83). It was determined that Alexander "Taz" Martinez and his wife resided at that address. (RR vol. 3 pp. 35-36). Based upon the information obtained during the surveillance, which included witnessing a confidential informant making purchases of cocaine from the Appellant, Officer Murillo believed he had probable cause to obtain a search warrant. (RR vol. 6 pg. 6). Judge Redwine issued the search warrant, and the warrant was executed on December 4, 2014, at the residence located at 301 East Chicago in Muleshoe, Texas. (RR vol. 3 pp. 36-39; RR vol. 6 pg. 6).

Cristal Quintanilla and Selena had been at the Appellant's residence prior to the arrival of the police in a Dodge Nitro registered to "Dakota". (RR vol. 3 pp. 126-127). They picked up two friends there, namely Shayla and "Pee Wee", aka Zedrick. *Id.* As they were leaving the residence, Cristal saw the police headed in the direction of Appellant's house, so she turned around and went back to

3

Appellant's house to tell them they had seen "the cops". (RR vol. 3 pg. 130). Cristal remembered people running everywhere, and that Appellant and B.J. got into her vehicle. (RR vol. 3 pp. 131-132). Cristal testified about where each person was seated and indicated each person's place on a diagram. Selena was in the front passenger seat. Pee Wee was seated directly behind her. B.J. was seated in the center of the back seat, and Shayla was seated directly behind the front seat passenger. Appellant was sitting on B.J.'s lap, in the center of the back seat. (RR vol. 3 pp. 132-133; RR vol. 6 pg. 28).

When law enforcement arrived at the residence, the black Dodge Nitro was seen in the carport with the reverse lights on as if the driver was about to back out. (RR vol. 3 pp. 20, 39, 133-134). Six people were inside the vehicle – four in the back and two in the front. (RR vol. 3 pg. 20). Appellant was one of the individuals in the back seat of the vehicle, seated in the middle behind the center console. (RR vol. 3 pp. 20 - 21, 25, 112, 118). Officer Andrade made eye contact with Appellant and saw him "reaching down". (RR vol. 3 pg. 118). Officer Parks asked everyone to get out of the vehicle, had them line up against a fence, and began getting names and dates of birth from the individuals. (RR vol. 3 pp. 20-21). While this was taking place, Appellant "took off running". (RR vol. 3 pg. 21). Officer Parks ordered him to stop three times, and when Appellant failed to stop, Officer Parks unholstered his Taser. Appellant was chased approximately fifty

4

yards in the street, and then Officer Parks fired the Taser at Appellant. Officer Parks missed his target. (RR vol. 3 pp. 23, 113-14). However, after the Taser was deployed, Appellant laid down in the street and was placed in handcuffs. (RR vol. 3 pp. 23-24).

Appellant was taken inside his residence, where he was searched. His wallet (containing cash) and his cell phone were taken. (RR vol. 3 pg. 42). The wallet was later found to contain $1,215.00. (RR vol. 3 pg. 55). One of the $100 bills found in Appellant's wallet was shown to have the same serial number as a $100 bill that law enforcement had previously given to a confidential informant to purchase cocaine from Appellant. (RR vol. 3 pp. 60-61; RR vol. 6 pp. 16-17).

The residence was searched. In the master bedroom, a handgun was found in a dresser drawer and a rifle was found hidden in a hole in the closet wall. (RR vol. 3 pp. 43-44; RR vol. 6 pp. 7, 9, 10). Seven glass pipes, a clear plastic baggie of methamphetamine, and two "bricks" of marijuana were also found in the dresser. (RR vol. 3 pg. 44, 74; RR vol. 6 pg. 8, 11, 12, 18,19, 21, 22). After being read the Miranda warnings, Appellant admitted that everything in the house was his. (RR vol. 3 pp. 41-42, 50, 53-54, 77-78, 155).

The black Dodge Nitro that was stopped in the driveway of the residence was searched. Chief Deputy Dominguez found a plastic bag that contained several other plastic baggies in the pocket located on the back of the driver's seat. (RR

vol. 3 pg. 92; RR vol. 6 pp. 23-24). The contents of some of the baggies were field tested and were found to be positive for cocaine. (RR vol. 3 pg. 93).

The baggies were sent to the Texas Department of Public Safety Crime Laboratory for analysis. The results of testing showed the contents of each of the six baggies. One baggie contained 18.09 grams of cocaine, two baggies were found to contain no controlled substances, one baggie contained 3.5 grams of cocaine, one baggie contained 1.75 grams of methamphetamine, and one baggie contained 48.73 grams of methamphetamine. (RR vol. 3 pp. 69, 74-75; RR vol. 6 pg. 22). Chief Geske testified that these quantities of methamphetamine and of cocaine would indicate that someone was selling those drugs. (RR vol. 3 pg. 152).

Cristal Quintanilla came to the Sheriff's office shortly after the search was done at Appellant's home, and she spoke with Chief Deputy Dominguez. (RR vol. 3 pp. 137, 157). Cristal testified about a Snapchat video that she had on her cell phone. Cristal explained that Snapchat allows you take videos or photographs that are a few seconds long and that you can send them to your friends. (RR vol. 3 pg. 137). Until recently, the videos and pictures were not able to be "saved" and they "go away" after 24 hours has passed. (RR vol. 3 pp. 137, 141). Cristal testified about a Snapchat from Appellant that had been posted on December 4, 2014. She showed Deputy Dominguez the video and allowed him to make a recording of it. (RR vol. 3 pp. 138-139). The Snapchat video was played for the jury, and Cristal

identified Appellant as being the person who appeared in the video. (RR vol. 3 pg. 141). In the short video, Appellant clearly says "Does the b**** want some pure cocaine or not", repeats that statement again, and talks about counting some money. (RR vol. 3 pp. 140-141; RR vol. 6 pg. 31).

The jury found Appellant guilty on all four counts as alleged in the indictment. (RR vol. 4 pg. 42; CR pp. 32, 34, 37, 38). Appellant was sentenced on Counts I, II, and IV to five years in the Institutional Division of the Texas Department of Criminal Justice, with those sentences suspended for five years, and sentenced on Count III to two years confinement in the State Jail Division of the Texas Department of Criminal Justice. (RR vol. 4 pg. 42; CR pp.61-68).

## SUMMARY OF THE ARGUMENT

Appellant contends that the evidence is insufficient to support his conviction in Counts I and II of the indictment, alleging the evidence was insufficient to prove that Appellant possessed cocaine or methamphetamine. (Appellant's Brief, pg. vi). Specifically, Appellant argues the State failed to prove beyond a reasonable doubt that the cocaine and methamphetamine were in Appellant's custody, care, control, or management in light of the multiple individuals who had access to the drugs. (Appellant's Brief, pg. 4).

Sufficient evidence supports the Appellant's convictions on Count I and Count II of the indictment. The evidence at trial showed numerous affirmative

7

links between the Appellant and the controlled substances, which establish Appellant's possession of the controlled substances. The State established, to the requisite level of confidence, that the Appellant's connection to the controlled substances was more than just fortuitous, and a rational juror could have found that the Appellant possessed the controlled substances.

Appellant argued at trial and now argues in this appeal that he did not possess the methamphetamine and cocaine found in the vehicle. In this case, the jury was the finder of fact, and as such, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. At trial, the jury heard all of the evidence, including a video wherein Appellant denied the drugs found in the car were his. They heard the cross-examination of the law enforcement officers and witnesses presented at trial. The evidence, when viewed in the light most favorable to the verdict, demonstrates that a rational trier of fact could have found the State proved, beyond a reasonable doubt, the element that Appellant challenges, to wit: that Appellant possessed methamphetamine and that Appellant possessed cocaine with the intent to deliver. Accordingly, the Court should overrule Appellant's sole point of error.

## RESPONSE TO APPELLANT'S SOLE POINT OF ERROR

### Standard of Review

The standard of review for a sufficiency analysis is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). The standard gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319, 99 S.Ct. at 2789.

Evidence can be legally sufficient for a conviction even if it is entirely circumstantial. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). The same standard of review is used for both circumstantial and direct evidence cases. *Hooper v. State,* 214 S.W. 3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Acosta v. State,* 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). If the evidence supports conflicting inferences, a reviewing court should "presume the factfinder resolved the conflicts in favor of the prosecution," because the factfinder "exclusively determines the weight and credibility of

evidence." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012, quoting *Jackson, supra* at 319-26). The State need not have disproved all reasonable alternative hypotheses inconsistent with a defendant's guilt; rather, the verdict should be affirmed if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." (*Wise, supra* at 903).

The jury as fact finder is the sole judge of the weight and credibility of the evidence presented, and is free to believe or disbelieve any testimony. *Brown v. State*, 270 S.W.3d 564,568 (Tex. Crim. App. 2008), *cert. denied*, 556 U.S.1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009); *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). The presumption is that the jury resolved conflicting inferences in favor of the verdict, and a reviewing court should defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). So long as the verdict is supported by a reasonable inference, it is within the jury's province to choose which inference is most reasonable. *Laster v. State*, 275 S.W.3d 512, 523-24 (Tex. Crim. App. 2009).

## Discussion

Appellant appeals only two of the four counts wherein he was convicted by a jury. In the two counts the subject of this appeal, Appellant was charged with and convicted of two counts of the offense of possession of a controlled substance,

10

Penalty Group 1, with intent to deliver, in an amount of four grams or more but less than 200 grams. The indictment alleged that Appellant:

> Count I: on or about the 4th day of December, 2014, did then and there knowingly possess with intent to deliver, a controlled substance, namely, cocaine, in an amount of four grams or more but less than 200 grams.
>
> Count II: on or about the 4th day of December, 2014, did then and there knowingly possess with intent to deliver, a controlled substance, namely, methamphetamine, in an amount of four grams or more but less than 200 grams.
> (CR pg. 5-6)(RR vol. 3 pg. 10-11).

The elements of the offense—as pled—are that (1) a person (2) knowingly (3) possesses (4) with intent to deliver (5) a controlled substance listed in Penalty Group 1 (6) in an amount of between four grams or more but less than 200 grams. See TEX. HEALTH & SAFETY CODE ANN. §481.112(a), (d).

Appellant's sufficiency challenges focus on whether the evidence is sufficient to show that any rational trier of fact could have found beyond a reasonable doubt that Appellant *knowingly possessed* cocaine or that Appellant *knowing possessed* methamphetamine, with the intent to deliver, in amounts between four and 200 grams. In particular, he makes the same argument that was made at trial, to wit: that the evidence was insufficient to connect the Appellant to the drugs found in the vehicle. As such, the State was required to prove that (1) Appellant exercised control, management, or care over the 21.59 grams of cocaine and the 50.48 grams of methamphetamine. Whether by direct evidence or

11

circumstantial evidence, the State was also required to establish "to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the "affirmative links" rule. *Poindexter v. State,* 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005).

The "affirmative links" rule is designed to protect the innocent bystander from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

The *Evans* court gave a non-exclusive list of possible "affirmative links" that Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession of contraband:

(1) the defendant's presence when a search is conducted;

(2) whether the contraband was in plain view;

(3) the defendant's proximity to and the accessibility of the narcotic;

(4) whether the defendant was under the influence of narcotics when arrested;

(5) whether the defendant possessed other contraband or narcotics when arrested;

(6) whether the defendant made incriminating statements when arrested;

(7) whether the defendant attempted to flee;

(8) whether the defendant made furtive gestures;

(9) whether there was an odor of contraband;

(10) whether other contraband or drug paraphernalia were present;

(11) whether the defendant owned or had the right to possess the place where the drugs were found;

(12) whether the place where the drugs were found was enclosed;

(13) whether the defendant was found with a large amount of cash; and

(14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162, n. 12. The *Evans* court noted, however, that the factors noted in the footnote are simply factors which may circumstantially establish the possession element of the offense and are not a litmus test. *Id.* The *Evans* court also noted that it is not the number of links that is dispositive, but rather the logical force of all the evidence, both direct and circumstantial. *Id.* Whether the possession element is met should be judged by the same standard as all other evidence since the "affirmative links" rule is not an independent test of legal sufficiency. *Id.* at 161, n. 9.

<u>Application of Legal Sufficiency Standard to Facts of Case</u>

The *Evans* court framed an "affirmative links" sufficiency challenge as "whether there is evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Id.* at 161, n. 9. The evidence presented at Appellant's trial was sufficient to link him to the methamphetamine and the cocaine found in the pocket behind the driver's seat.

The first affirmative link is that the Appellant was present when the search was conducted. The Appellant resided at the address of the search, and he was on the premises, inside the vehicle located in his driveway, when the search warrant was executed. (RR vol. 3 pp. 21, 40, 112, 118).

The next link between Appellant, the methamphetamine, and the cocaine found in the vehicle is Appellant's proximity to that contraband. Appellant was seated in the lap of another person in the center of the back seat. (RR vol. 3 pp.112, 132; RR vol. 6 pg. 28). Appellant was seated within arm's reach of the pocket where the contraband was found. Appellant argues that there were at least five people in the vehicle similarly situated to Appellant. (Appellant's Brief pg. 9). The five others in the vehicle, however, were not similarly situated to the Appellant. Four of the individuals found in the vehicle– Cristal, Selena, Shayla and Pee Wee – had previously left Appellant's residence, but when they saw the

police headed that direction, they <u>returned</u> to Appellant's residence to warn people there that the police were coming. (RR vol. 3 pg. 130). If anyone in the car had knowledge of the substantial quantity of drugs in the vehicle at that time, it would not be rational that they would return to the scene with the drugs in light of the expected presence of law enforcement. Upon the vehicle's arrival at Appellant's residence, Appellant and B.J. jumped in the car and were seated in the middle seat behind the driver, with Appellant seated on B.J.'s lap. (RR vol. 3 pp. 131-132). This arrangement would likely preclude the person to Appellant's right (Shayla) and the person Appellant was sitting on (B.J.) from being able to reach the pocket to place the drugs there. The two people seated in the front seat (Cristal and Selena) could not easily reach the pocket behind the driver's seat. There were only two persons, therefore, namely the Appellant and the person seated to his left (Pee Wee), who had access to the pocket. Pee Wee is one of the passengers who was in the car when it returned to the Appellant's residence. If he had placed the drugs in the pocket, it would not be likely that he would return to Appellant's residence with the contraband, knowing the police were headed that way. There are, however additional links to connect the Appellant with the contraband found in the pocket of the vehicle.

Another strong link between Appellant and the methamphetamine and cocaine within the pocket is the fact Appellant made furtive gestures. Appellant

was seen "reaching down" behind the driver's seat as the officers arrived at the scene. Officer Andrade described looking right at Appellant as he was making those movements. (RR vol. 3 pg. 118).

Appellant's flight from the scene, leading to a foot chase and law enforcement's deployment of a Taser, also links Appellant to the contraband. Appellant ignored commands to stop and only ceased running when he heard the taser deploy. (RR vol. 3 pg. 23). Appellant ran *before* any contraband was found in the vehicle, and he was the only person who fled from the vehicle where the contraband was located. Thus, the fact that Appellant fled the scene before the vehicle had even been searched indicated he knew there was contraband in the vehicle. Appellant's flight from the scene indicates a consciousness of guilt and is a circumstance from which an inference of guilt may be drawn. *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); *Whittington v. State,* 580 S.W.2d 845, 846-847 (Tex. Crim. App. 1989), *cert. denied*, 494 U.S. 1039 (1990); *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007).

Other affirmative links include Appellant's incriminating statements made when arrested. Appellant admitted to possessing the 1.63 grams of methamphetamine and the 1.98 pounds of marijuana that were found inside his residence. (RR vol. 3 pg. 50; RR vol. 6 pg. 14). The amount of these drugs, especially the marijuana, is more consistent with delivery than personal use.

Multiple glass pipes commonly used for smoking methamphetamine were present in Appellant's home, which Appellant also admitted were his. Additionally, a handgun and a rifle were found concealed in the Appellant's bedroom. (RR vol. 3 pg. 44). These items link the Appellant to the business of selling narcotics.

Another link connecting the Appellant to the contraband is his possession of a large amount of cash, primarily in the smaller denominations of $5.00, $10.00 and $20.00. Of the cash found in Appellant's wallet, which was on his person at the time of detention, one bill was a $100 bill that had been previously used by a confidential informant to purchase cocaine from Appellant. (RR vol. 3 pg. 42, 55, 60; RR vol. 6 pg. 16).

Finally, Appellant made an incriminating statement that was recorded and shared with his friends via Snapchat. In that video, Appellant is asking if anyone wants pure cocaine and talks about counting his money. (RR vol. 6 pg. 31). The Snapchat video was only visible to Appellant's friends for a twenty-four hour period, which meant the video was posted very close in time to the time the search warrant was executed. Large quantities of methamphetamine and cocaine – amounts consistent with delivery rather than personal use amounts - were found in the car, indicating that the person who possessed them was in fact a seller of narcotics. The Snapchat video affirmatively links Appellant to the possession of and the selling of those substances.

At trial, Appellant argued that there was no evidence whatsoever produced that showed possession. (RR vol. 4 pg. 31). The jury, however, resolved the conflicting inferences in favor of the verdict and convicted Appellant of Counts I and II.

## Conclusion

The evidence is sufficient to show that Appellant knowingly possessed methamphetamine and that Appellant knowingly possessed cocaine, with the intent to deliver. The links described above clearly connect the Appellant to the cocaine and to the methamphetamine found in the vehicle in close proximity to Appellant. While Appellant argues there was no more than a fortuitous link between Appellant and the drugs found and that the circumstantial evidence used to convict Appellant was applicable to the other individuals in the vehicle, the evidence does not support that conclusion. Appellant alone fled from the vehicle. Appellant alone possessed other methamphetamine and a substantial amount of marijuana. Appellant had a substantial amount of cash in his possession, and he alone possessed a $100 bill connecting him to a previous cocaine sale. Appellant was in close proximity to the location where the drugs were found. Appellant professed his possession of pure cocaine in the Snapchat video. These are all factors that specifically connect only the Appellant, and no other, to the drugs in the vehicle. The verdict is supported by a reasonable inference, and it is within the jury's

province to choose which inference is most reasonable. The presumption is that the jury resolved conflicting inferences in favor of the verdict, and a reviewing court should defer to that determination.

## CONCLUSION AND PRAYER

The evidence in this case is sufficient to show the possession element of the offenses charged. When the evidence is examined in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that the Appellant possessed methamphetamine and that the Appellant possessed cocaine, with intent to deliver. WHEREFORE, PREMISES CONSIDERED, the Appellee prays that this Honorable Court overrule Appellant's point of error, and that Appellant's convictions and sentences be upheld and the appeal dismissed.

Respectfully Submitted,

By: /s/Kathryn H. Gurley
Kathryn H. Gurley
287th Judicial District Attorney
State Bar No. 10022700
P.O. Box 729
Friona, Texas 79035
Tel.: (806) 250-2050
FAX: (806) 250-9053
Email: districtattorney@parmercounty.net

19

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the above-entitled and numbered brief has been served on Julie Goen Panger, counsel for Appellant as to this appeal, by email to julie@thelubbocklawyer.com, on this the 21st day of June, 2017.

<u>/s/Kathryn H. Gurley</u>
Kathryn H. Gurley
Attorney for Appellee

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to TEX. R. APP. P. 9.4(i)(3), I further certify that, relying on the word count of the computer program used to prepare the foregoing State's Response, this document contains 3,982 words, inclusive of all portions required by TEX. R. APP. P. 9.4(i)(1) to be included in calculation of length of the document.

Kathryn H. Gurley
287th Judicial District Attorney
State Bar No. 10022700

By: <u>/s/ Kathryn H. Gurley</u>
Kathryn H. Gurley